Philip J. SCUTIERI, Jr. and Jacqueline Simmons, Plaintiffs-Appellants,

v.

Duriel "Budd" PAIGE and Alcides Marquez, Defendants-Appellees,

James Graham, Defendant.

Philip J. SCUTIERI, Jr. and Jacqueline Simmons, Plaintiffs-Appellees,

v.

Duriel "Budd" PAIGE, Defendant-Appellant,

Alcides Marquez, Defendant.

No. 84–5823, 85–5915.

United States Court of Appeals, Eleventh Circuit.

Jan. 26, 1987.

As Corrected Feb. 6, 1987.

Joel S. Perwin, Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, P.A., Miami, Fla., for defendant-appellant in Nos. 84–5823 and 85–5915.

Robert C. Josefsberg, Miami, Fla., for defendant-appellant in No. 85–5915.

Jesse C. Jones, Hal S. Vogel, Bailey, Dawes & Hunt, Miami, Fla., for Scutieri and Simmons.

Before JOHNSON and ANDERSON, Circuit Judges, and GARZA *, Senior Circuit Judge.

GARZA, Senior Circuit Judge:

This civil wiretapping litigation arose when Philip Scutieri, Jr. and Jacqueline Simmons filed a six count complaint against Duriel Paige, Alcides Marquez and James Graham. The complaint alleged that these individuals installed bugging devices in Scutieri's and Simmons' apartment that allowed them to intercept private con- nation.

* Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by desig-

versations and telephone calls. The complaint asserted violations of two federal wiretapping statutes, 18 U.S.C. § 2520 and 47 U.S.C. § 605, a Florida wiretapping statute, Fla.Stat. 934.10, a claim under 42 U.S.C. § 1983, and claims of invasion of privacy and intentional infliction of emotional distress. The jury rendered a general verdict against Paige for compensatory damages, finding that Paige willfully installed wiretaps and intercepted Plaintiffs' conversations. The jury found against Paige, Marquez and Graham on their counterclaims. Case No. 84–5823 involves an appeal by Scutieri and Simmons. They challenge the lower court's granting of a directed verdict in favor of Marquez and the court's pre-trial ruling rejecting their claim for punitive damages.

Case No. 85–5915 involves an appeal by Paige. Paige contends that six months after trial his counsel found new evidence that one of the Plaintiffs' witnesses, an asserted electronic frequency countermeasure expert, was a fake. Paige moved for a new trial pursuant to Rule 60(b), Fed.R. Civ.P., or, alternatively, for the opportunity to take discovery and present evidence at a hearing. The lower court denied both aspects of the motion without specific findings or conclusions. In addition to this issue, Plaintiffs challenge the district court's denial of Plaintiffs' Rule 60(b) motion regarding new evidence of Marquez's involvement in the electronic eavesdropping.

Scutieri is an officer and director of Sunrise Club, Inc., a Florida corporation, and is a general partner of Sundale Associates, Ltd., a Florida limited partnership that owns a life care facility for the elderly in Miami. Simmons also served as a director of the Sunrise Club. Until 1980, Scutieri and Simmons, while engaged to be married, managed the Sunrise Club and lived in apartment 401A of the complex. Their unit was a top floor corner apartment in one of the residential buildings of the complex. Paige also lived at the Sunrise Club where he worked as the director of security and maintenance. Graham served as a bookkeeper for the project.

In April of 1980, Southeast First National Bank of Miami filed a foreclosure action against Scutieri and Simmons alleging a default in interest payments.[1] A state court judge appointed Phillip Revitz as receiver *pendente lite* of the complex on May 15 of that same year. Although Scutieri and Simmons no longer managed the complex, they continued to live in apartment 401A.

At trial, Scutieri and Simmons asserted that Paige, at the request of Southeast Bank and Revitz, hired Marquez and Luis Fernandez, co-owners of a burglar alarm company, to install wiretaps and bugging devices in apartment 401A. This installation would enable Paige to monitor and record any conversations within the apartment and any conversations over the telephone. Southeast Bank and Revitz then could understand and anticipate Plaintiffs' trial strategies in the foreclosure proceedings.

Sunrise Club was designed with an intricate intercom system which adequately lent itself to an elaborate wiretapping connection. The system consisted of a warning signal, which illuminated a light in the guardhouse console when pressed by a resident, and an intercom so that a guard could communicate with each resident. Only the warning light system was in use at the complex. The intercom system was never connected to the individual apartments.

However, evidence at trial demonstrated that the intercom between apartment 401A and the guardhouse had been connected.

---

1. Sometime in 1977, Scutieri and Simmons obtained a loan from Southeast Bank to finance construction of the project. In 1979, a dispute with the lender arose concerning delayed disbursements and cost overruns. In April of 1980, although it had regularly sent statements reciting a zero interest rate and zero dollars due, Southeast Bank filed a foreclosure action. Scutieri and the Sunrise Club counterclaimed. Ultimately, Scutieri prevailed because, as the jury found, the bank had waived interest and the court held that this precluded foreclosure. *Southeast Bank v. Sundale Assoc., Ltd.*, 472 So.2d 1196 (Fla. 3d DCA 1985).

Further, this connection was also hooked up to a vacant apartment, apartment 101A located on the first floor directly below 401A, so that conversations in 401A could be heard in the guardhouse as well as in 101A. It was also established that the telephone lines for apartments 401A and 101A had been connected with an illegal wire-bridge. This enabled a person in 101A to listen to telephone conversations in 401A. The guardhouse telephone was also tied into 101A. It was also shown that sometime before mid-August of 1980, Paige, who had the only control key to change the cylinders of the apartment locks, changed the lock in apartment 101A. Paige retained the only key to open the door of apartment 101A.

In mid-August, Scutieri and Simmons began experiencing difficulties with their telephone. These difficulties primarily involved ringing problems, incessant clicking and loss of dial tone. They became aware of the wiretapping in September, shortly after Revitz evicted Simmons. Gloria Goldman, a former bookkeeper who had been fired by Revitz, was informed by Ilow Rotenberry, a security guard, that Plaintiffs' telephone was bugged. Paige also admitted to two security guards that the telephone and premises of apartment 401A was being bugged. Goldman and Rotenberry told Simmons of this fact. Acting on this information, the couple hired Emil E. Behre, an audio frequency countermeasure technician, to investigate the situation. Behre testified in a videotaped deposition that he found an automatic device that would turn on if connected to a telephone or an intercom line to record conversations. This device was located in a panel box of the intercom system in the social director's office. Upon examining the telephone line, Behre determined that there was a listening device on the circuit which sounded like it was being removed as he conducted his examination.

Consequently, Scutieri and Simmons informed the state court of Behre's discoveries. Jerry Fine, a Wackenhut investigator, was retained by Revitz to conduct an electronic sweep of the complex. Fine was guided around the complex by Paige. Fine swept only Pat Scheff's office and Paige's apartment. Paige did not take Fine to apartment 401A, apartment 101A or the central telephone panel of building A. On the basis of this report Revitz represented to the state court that the investigator had found no listening devices.

On January 28, 1981, Scutieri, on behalf of the Sunrise Club, Inc. and Sundale Associates, Ltd., filed a Chapter 11 petition. He thereby regained control of the complex as debtor in possession and conducted an investigation of the entire complex and its employees. On April 13, 1981, a Southern Bell service technician discovered the illegal wire-bridge that connected apartment 401A to apartment 101A. Scutieri also hired an expert in detecting electronic devices, Craig Stevenson, who thoroughly investigated the circuitry in building A and discovered the manner in which the intercom system had been altered for wiretapping purposes.

Scutieri and Simmons thereafter filed a complaint at law seeking damages for the illegal invasions. Four days before trial, they motioned to amend their complaint to add a request for punitive damages to the *ad damnum* clause. This motion was denied before the trial commenced. The Plaintiffs' motion for reconsideration was also denied and the judge excluded the issue of punitive damages during the trial. During the jury instruction conference, counsel made a Rule 15(b) motion to conform the pleadings to the evidence on the punitive damages issue. This motion was similarly denied.

After a six day jury trial in June of 1984, the judge granted a directed verdict in favor of Marquez and Graham, and sent the claim against Paige and Defendants' counterclaims to the jury. The jury returned a general verdict in favor of Scutieri for $125,000 and in favor of Simmons for $100,000 against Paige, and a verdict against all Defendants on their counterclaims for abuse of process. The court denied Paige's post-trial motions for j.n.

o.v., remittitur and new trial, as well as Plaintiffs' motion for a new trial regarding the directed verdict for Marquez. Paige then filed the appeal in Case No. 84–5823 and Plaintiffs cross-appealed the disallowance of their punitive damages claim and the directed verdict in favor of Marquez. On July 8, 1985, this Court granted Paige's motion for voluntary dismissal of his appeal, leaving only Plaintiffs' cross-appeal pending.

On December 21, 1984, Paige filed a Rule 60(b) motion in the district court on the basis of newly discovered evidence. This evidence concerned the competency and credibility of Behre and Plaintiffs' misconduct in allegedly preventing Paige from gaining discovery at the time of trial. Paige sought a new trial or, in the alternative, further discovery and an evidentiary hearing regarding the new evidence. The court denied this motion without opinion on September 10, 1985.

On July 12, 1985, Scutieri and Simmons filed a Rule 60(b) motion on the grounds of newly discovered evidence regarding Marquez's culpability. Marquez did not respond to this motion. The court also denied this motion on September 10, 1985. Paige consequently filed the appeal in Case No. 85–5915 on the denial of his Rule 60(b) motion. Scutieri and Simmons likewise cross-appealed the denial of their Rule 60(b) motion.

■ We first address the issues raised in Case No. 84–5823. Our initial inquiry is whether the district court erred in granting Marquez's motion for a directed verdict. The standard of review for this Court is whether, considering all of the evidence in the light most favorable to the party opposed to the motion, the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable persons could not reach a contrary conclusion. *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir.1985); *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969) (en banc). "There must be a conflict in substantial evidence to create a jury question." *Boeing*, 411 F.2d at 375. Thus, Scutieri and Simmons maintain the burden to demonstrate that there was substantial evidence against Marquez to submit the case to the jury. Our study of the record reveals that substantial evidence did exist upon which reasonable persons could find Marquez liable for the electronic interceptions. Accordingly, we reverse the judgment of the district court on this point and remand for further proceedings.

There was sufficient testimony by the employees of the Sunrise Club that the emergency light system was operating without incident. However, Revitz contacted Marquez and his partner, Fernandez, to repair the system. There was also evidence that Revitz had been informed to contact two other services if the system malfunctioned. Marquez even testified that he had no knowledge and that Fernandez only had some knowledge of how to repair and maintain an intercom system. Additionally, the evidence showed, and Marquez admitted, that he brought George Smith, a former manufacturer of electronic surveillance devices, to the Sunrise Club to assist him in repairing the emergency call system.

Paige testified that Marquez and Fernandez were the only technicians who worked on the communications system during the summer of 1980. Marquez was seen working on the intercom box in apartment 101A, to which Paige only had access. This room was proven to be the monitoring station for the eavesdropping scheme. Marquez admitted working in the central telephone area where the illegal telephone wirebridge was located. Marquez worked on the guardhouse console where only apartments 401A and 101A's connections were tagged, where 401A and 101A's intercom wires were re-routed to a previously unused handset, where fuses were bypassed and interfaces were apparent. Marquez also worked in the social director's office where the tele-recorder was located and where the intercom wires for apartments 401A and 101A had been extracted from the other wires and re-routed to the guardhouse console handset. Marquez and Fer-

nandez claimed that they worked between 80 to 120 hours, on 8 to 12 visits, diagnosing the problem with the emergency call light system. Based on these facts alone, the jury could have reasonably questioned Marquez's role in the wiretapping.

However, more circumstantial evidence exists which could further implicate Marquez in this surreptitious network of unlawful eavesdropping. Marquez denied returning to the Sunrise Club after October of 1980. Yet, a bus driver for the complex testified that he saw two Latins working on the intercom system in November or December. They told the bus driver that they were installing an alarm system. Marquez later claimed that he was placing a siren in the system to accompany the light warning mechanism. His brief on appeal states, however, that he was adjusting the handset for voice communication.

Further, the security guards were under strict instructions to log-in each person and vehicle that entered the premises. The evidence reveals that not once during the summer of 1980 do the names Marquez or Fernandez appear in the guard log. The first and only time they appear is on a November 20, 1980 log page and even this entry is out of chronological order. Guard Rotenberry stated that sometime in August or September of 1980, he saw Marquez working in the guardhouse. As he picked up the log to record Marquez's presence, Paige raced over, took the log and instructed Rotenberry not to log-in Marquez. It seems odd that Paige, who the evidence clearly established was responsible for the wiretapping, would conceal Marquez's presence on the premises if Marquez was there for a purely legitimate and proper reason.

Marquez admits that the evidence was legally sufficient to establish that an electronic interception of Scutieri and Simmons' oral and wire communications did occur. He only argues that there was not sufficient evidence linking him to the interceptions. The district court agreed. We do not agree. As Marquez states in his appellate brief, "although there is some circumstantial evidence which might give rise to some suspicion of Marquez, that suspicion is no less speculative than a number of alternatives available on the evidence in this case." While this may be a good argument to the jury, the jury should choose among reasonable inferences in a case based on circumstantial evidence, and such a case should not be decided by a directed verdict. *Fidelity & Deposit Co. v. Southern Utilities, Inc.*, 726 F.2d 692, 694 (11th Cir.1984); *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1325 (11th Cir.1982).

There may have existed a closely-knit group of individuals in this case who conspired in illegal wiretapping. Direct evidence may not be available based on the stealthiness of the invasion. The success of a wiretap ultimately depends upon secrecy and concealment. *Awbrey v. Great Atl. & Pac. Tea Co.*, 505 F.Supp. 604, 607 (N.D. Ga.1980). There even appears to be a hint of conspiracy in the fact that the Wackenhut investigator, hired by Revitz, never inspected the crucial areas of the premises because he was directed away from those areas by Paige. The covert behavior surrounding Marquez's presence at the Sunrise Club constituted substantial evidence that individuals other than Paige may have been involved in the unlawful invasion of Scutieri's and Simmons' privacy. It was well within the jury's province to determine whether Marquez was involved with Paige in installing the wiretaps.

■ The second issue to be addressed in this case is whether the district court abused its discretion in denying Scutieri and Simmons the right to claim punitive damages. The Defendants' appellate brief concedes that "there was sufficient evidence to permit the jury to conclude that Paige acted with the requisite degree of malice to sustain an award of punitive damages." However, they argue that the court acted within its discretion because the unilateral pre-trial stipulation filed by Plaintiffs did not list punitive damages as an issue, and therefore they waived any such relief. Paige likens this unilateral stipulation to a final pre-trial order which, under

Rule 16(e), supercedes the pleadings and may be modified only to prevent a manifest injustice. Scutieri and Simmons disagree with that contention and claim that the court excluded the issue of punitive damages because the complaint did not explicitly request such relief in the demand for judgment, and because the court would not allow them to amend the complaint. Our review of the record indicates that the district court clearly erred in not submitting the issue of punitive damages to the jury, and therefore we reverse on this point and remand for a determination of punitive damages. Plaintiffs' complaint specifically alleged that Defendants acted maliciously, wantonly, willfully and in bad faith and with a reckless disregard for Plaintiffs' rights. It alleged that Defendants' conduct was so flagrant and wanton as to justify an award of punitive damages.[2]

This case illustrates the dangers of dispensing with a pre-trial conference in a factually complex case. The trial court merely instructed the parties to submit pre-trial stipulations pursuant to Rule 14 of the Local Rules of the United States District Court for the Southern District of Florida. The Plaintiffs' pre-trial stipulation listed several facts to be litigated. It mentioned the amount of any compensatory damages, but made no mention of punitive damages. Its statement of the issues remaining for determination included a general prayer for the "amount of damages to which Plaintiffs are entitled under the applicable Statutory provisions." The Defendants subsequently filed their own unilateral pre-trial stipulation which listed, *inter alia*, the issue of punitive damages. The Plaintiffs then filed two more amended pre-trial stipulations in which they again failed to raise a claim for punitive damages. Four days

before trial, Plaintiffs filed another amended pre-trial stipulation in which they listed the issue of punitive damages. On the same day, they also filed a motion for leave to file an amended complaint which contained an explicit prayer for punitive damages.

At the outset of trial, the court denied Plaintiffs' motion for leave to amend. Plaintiffs subsequently made an emergency motion arguing that, based on Rule 54(c), Fed.R.Civ.P., and *Guillen v. Kuykendall*, 470 F.2d 745 (5th Cir.1972), a request for punitive damages need not be included in a prayer for relief where the facts, as alleged, indicate the presence of wantonness, malice or reckless disregard. This motion was denied. At the jury charge conference the judge also denied Plaintiffs' motion to amend the pleadings to the proof. It is clear from the record that the judge believed he was denying a motion to amend the complaint.

The issue of punitive damages was properly raised by Scutieri and Simmons in their complaint, pre-trial stipulations and in Paige's pre-trial stipulation. Plaintiffs' complaint sufficiently alleged that Defendants' flagrant and wanton conduct gave rise to an award of punitive damages. Plaintiffs' first unilateral pre-trial stipulation specified as an issue the "amount of damages to which Plaintiffs are entitled under the applicable Statutory provisions." The complaint sought civil damages for, *inter alia*, violations of 18 U.S.C. § 2520 and Fla.Stat. § 934.10. These statutes provide that a wiretap victim shall recover from the wrongdoer actual damages, punitive damages, and attorneys' fees and costs. Even Defendants' first unilateral pre-trial stipulation stated as an issue:

---

**2.** The complaint alleged:

 14. PAIGE, GRAHAM and MARQUEZ so acted intentionally and maliciously, wantonly, willfully, in bad faith, with gross and reckless disregard for the rights and interest of the Plaintiffs, without Plaintiffs' consent or approval and without any good faith reliance on a court order or legislative authorization for his acts.

 \* \* \* \* \* \*

 20. Defendants' conduct was so flagrant and wanton as to justify an award of punitive damages so as to discourage others in the community from engaging in similar acts and conduct.

The prayer for relief requested:

WHEREFORE, Plaintiffs demand compensatory damages in excess of $1,000,000 each, costs and reasonable attorneys' fees.

"Are Plaintiffs entitled to an award of punitive damages."

Moreover, Paige has provided no authority for the binding effect he seeks to give the unilateral pre-trial stipulations. Local Rule 14 requires a pre-trial conference or, unless the judge orders otherwise, the parties are required to meet and prepare a pre-trial stipulation. If the parties cannot execute such a stipulation, then the Rule contemplates that each party should make a unilateral filing of proposed stipulations. The final pre-trial stipulation that emerges from the pre-trial conference controls the future course of the case and may be amended by the court only to prevent manifest injustice.

In this case, however, the district court judge dispensed with a pre-trial conference. Instead of following Rule 14 to the letter, the parties each filed a series of unilateral pre-trial stipulations. Defendants' first such filing listed Plaintiffs' entitlement to punitive damages as an issue in the case. Only Plaintiffs' third amended filing specifically listed punitive damages as an issue. Both parties, however, amended their unilateral pre-trial stipulations freely and without objection. In fact, Paige never properly objected to Plaintiffs' amendment of the unilateral pre-trial stipulations to explicitly include punitive damages. There is no indication that these stipulations were considered to have any binding effect or were relied upon as a final authority by either party.

Finally, the issue of punitive damages was effectively raised by the Plaintiffs' first unilateral pre-trial stipulation. That document listed as one of the issues of law for determination by the court the "amount of damages to which Plaintiffs are entitled under the applicable Statutory provisions." As these statutory provisions specifically provide for the award of punitive damages, this statement reasonably could be construed to encompass the punitive damages issue, particularly in light of the Defendants' own stipulation which listed punitive damages as an issue. *Cf. Geremia v. First Nat'l Bank of Boston,* 653 F.2d 1, 5 (1st

Cir.1981) (designation of contested issues of law and fact in a pre-trial memorandum should be interpreted broadly to cover any legal or factual theories that might be embraced by their language); *accord,* 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1527, at 609 (1971).

Rule 54(c), Fed.R.Civ.P., states that "[e]xcept as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Thus, a specific prayer for punitive damages was unnecessary. *Equity Capital Co. v. Sponder,* 414 F.2d 317, 319 n. 1 (5th Cir.1969). If the complaint alleges conduct that would support a claim for punitive damages, and if evidence is presented creating a jury question on such relief, the judge commits reversible error in not instructing the jury on that issue. *Guillen v. Kuykendall,* 470 F.2d 745, 748 (5th Cir.1972). In *Guillen,* the complaint alleged malice and requested compensatory damages, but did not request punitive damages. The Fifth Circuit held:

It is not necessary to claim exemplary damages by specific denomination if the facts show that the wrong complained of was "inflicted with malice, oppression, or other like circumstances of oppression[.]" The plaintiff's complaint alleged malice and unwarranted excessive actions. The plaintiff's allegations were sufficient to take the case to the jury under Texas law. The trial court erred in not instructing the jury as to exemplary damages since under Rule 54(c), Federal Rules of Civil Procedure, a judgment for the plaintiff should have granted him all the relief to which he was entitled.

470 F.2d at 748 (citations omitted).

The complaint alleged an adequate factual basis for punitive damages, specifically asserting that Defendants "acted intentionally and maliciously, wantonly, willfully, in bad faith, with gross and reckless disregard for the rights and interest of the Plaintiffs." The complaint also claimed that their conduct was "so flagrant and

wanton as to justify an award of punitive damages." In addition, Paige concedes that there was sufficient evidence to permit the jury to conclude that Paige acted with the requisite degree of malice to sustain an award of punitive damages. Scutieri and Simmons must feel betrayed in learning that every word uttered in the privacy of their home had been listened to by outsiders. Based on these principles of law and showing of facts, the district court committed reversible error in excluding the issue of punitive damages from the trial.

Case No. 85–5915 carries with it four issues and a survey of additional facts. Paige alleges as fact that one of Scutieri and Simmons' witnesses, Emil E. Behre, the audio frequency countermeasure expert, "was a complete fake." Moreover, Paige claims that after withholding Behre's report and failing to proffer his whereabouts for two years, the Plaintiffs suddenly produced Behre for deposition. By agreement of all the parties, Behre testified in a videotaped deposition on April 23, 1984, that he investigated the Sunrise Club premises and found an automatic listening device. Defendants engaged in cross-examination of Behre during the deposition. At trial, Plaintiffs established that Behre was unavailable as defined in Rule 32(a)(3), Fed.R.Civ.P., and the court admitted the videotape deposition in evidence. Six months after trial, Paige's counsel allegedly found evidence that raised serious questions as to Behre's competency and credibility. Paige claimed that the evidence demonstrated that Behre was a borderline psychotic and that he committed perjury at trial. Paige moved for a new trial under Rule 60(b)(2) and (b)(3), or, alternatively, for the opportunity to take discovery and present evidence at a hearing before the district court. The judge denied both aspects of the motion without specific findings or conclusions. Paige asks this Court to reverse the lower court's denial of the motion and remand the case for new trial or for further discovery and a hearing.

The question on review is whether the district court abused its discretion in denying the Rule 60(b) motion. *Phillips v. Insurance Co. of N. Am.*, 633 F.2d 1165, 1167 (5th Cir.1981). We hold that the district court did not abuse its discretion in denying the motion for new trial pursuant to Rule 60(b)(2) or (b)(3). Additionally, the district court did not err in precluding discovery and an evidentiary hearing on Paige's motion.

First, the district court did not err in denying Paige's motion for a new trial under Rule 60(b)(2) based on asserted newly discovered evidence. For newly discovered evidence to provide a basis for a new trial under subsection (b)(2), a party must satisfy a five part test: (1) the evidence must be newly discovered since the trial; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that a new trial would probably produce a new result. *Ag Pro, Inc. v. Sakraida*, 512 F.2d 141, 143 (5th Cir.1975), *rev'd on other grounds*, 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976). A motion for a new trial under Rule 60(b)(2) is an extraordinary motion and the requirements of the rule must be strictly met. *Id.*

The Rule 60(b) motion stems from information contained in court records in Dade County, Florida, concerning two lawsuits in which Behre had been involved. Depositions of doctors contained in the record of a personal injury suit filed by Behre in 1972 indicate that a head injury he received had caused organic brain damage. This resulted in emotional problems and impairment of normal brain functioning. The expert witnesses apparently disagreed as to the prognosis for improvement.

Behre's testimony in that case also described a number of different jobs which Paige asserts casts doubt on his present testimony that he had been an audio frequency countermeasure technician for thirty years. Moreover, Paige contends that Behre's asserted intelligence work for the military is belied by the fact that he did not mention such work in the previous judicial

proceeding. Paige also contends that Behre misled the jury as to his high school and collegiate education. Behre was also involved in a divorce proceeding in 1974 in which he filed an affidavit describing his emotional problems. After discovering this evidence, Paige conducted a further investigation and now claims that Behre made a misstatement on his application for a detective's license.

 The district court did not abuse its discretion in denying Paige's Rule 60(b)(2) motion. Evidence that is contained in the public records at the time of trial cannot be considered newly discovered evidence. *Cf. Music Research, Inc. v. Vanguard Recording Soc'y, Inc.,* 547 F.2d 192, 196 (2d Cir.1976) (record publicly released three months prior to trial could not constitute newly discovered evidence). Further, although Paige claims that he was hindered by Plaintiffs from understanding the significance of Behre's testimony and report, Behre's deposition was conducted two months before trial, and therefore Paige had ample time to investigate Behre's background if his counsel had proceeded with due diligence.

The evidence also is merely impeaching. It goes to Behre's credibility and not to the substance of his testimony regarding the events at the Sunrise Club. Paige's contention that the testimony goes to Behre's competence to be an expert witness is unfounded both because Behre was not offered as an expert [3] and because, pursuant to Rule 601, Fed.R.Evid., a determination of general competency to testify is a question of credibility for the jury to decide. *United States v. Roach,* 590 F.2d 181, 186 (5th Cir.1979).

Finally, the outcome of this case would probably not be changed because of this asserted new evidence. Although Behre may have been the only witness with electronic eavesdropping expertise to observe the taps while they were actually in opera-

tion, Plaintiffs' other witnesses also observed the designs Behre described. Plaintiffs provided Stevenson's expert testimony and a Southern Bell serviceman's testimony as to the sophisticated wiretapping arrangement. It is also possible that Behre's credibility could have been rehabilitated through the testimony of officials of the Miami Police Department. Finally, there exists some evidence in the record that Behre is a competent and experienced audio frequency countermeasure technician.

 Second, the district court did not err in denying Paige's motion for a new trial under Rule 60(b)(3) based on alleged misconduct. Pursuant to a Rule 60(b)(3) motion, a final judgment may be set aside in the event of fraud, misrepresentation or other misconduct of an adverse party. The granting of Rule 60(b)(3) relief rests within the sound discretion of the trial court and should be liberally construed. *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1346 (5th Cir.1978). The conduct complained of must be tantamount to preventing the losing party from fully and fairly presenting his defense. On review, the only inquiry is whether there has been an abuse of discretion. *Id.* Paige's burden in the court below was to provide clear and convincing evidence of misconduct. This he failed to do.

Paige's only evidence of misconduct consists of the inference that Plaintiffs were untruthful in their answer to Paige's interrogatory requesting names and addresses of witnesses. Because Behre's report was not produced and because Behre was located just prior to his deposition, Paige believes that Plaintiffs acted improperly. This alleged conduct hardly rises to the level of clear and convincing evidence that Scutieri and Simmons acted with impropriety.

Paige made similar claims of concealment and misconduct before the district court in connection with a motion to ex-

---

**3.** Paige asserts that, while not officially offered as an expert, Behre gave testimony and opinions beyond the common understanding of the jury. The record does not indicate, however, that he objected to this testimony, asked that Behre be qualified as an expert, or requested that he be allowed to voir dire Behre on his qualifications.

clude witnesses and for a new trial. Paige appealed the denial of his post-trial motions, but voluntarily dismissed his appeal. Paige cannot resurrect pre-trial discovery grievances in the guise of a Rule 60(b) motion. In addition, a Rule 60(b) motion cannot substitute for an appeal. *Fackelman v. Bell,* 564 F.2d 734, 735 (5th Cir. 1977). A party who has made a voluntary choice not to appeal from a judgment cannot be relieved from that choice under Rule 60(b). *Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950). To the extent Paige's motion accuses Simmons and Scutieri of misconduct in the discovery process, he cannot revive the motions the district court denied or the appeal he voluntarily dismissed.

■ Third, the district court did not err in denying Paige's motion for further discovery and an evidentiary hearing on the issue of Behre's competency and qualifications. Generally, a district court has discretion not to hear oral testimony on motions. *Gary W. v. Louisiana,* 601 F.2d 240, 244 (5th Cir.1979). The court did not abuse its discretion both because it had a detailed record of the evidence before it and because Paige did not adequately indicate how further discovery or a hearing would have aided the court's determination.

■ We are faced with one additional issue and this one is advanced by Scutieri and Simmons. We must determine whether the district court abused its discretion in denying Plaintiffs' Rule 60(b) motion for a new trial as to Defendant Marquez. The alleged newly discovered evidence consisted of testimony of Jorge Silmare, popularly known as George Smith, Marquez's "parts supplier" at the Sunrise Club. When Plaintiffs finally located and served him for deposition, Smith directly implicated Marquez in the electronic surveillance scheme. His testimony revealed that Marquez asked him how to install a bugging device on a telephone line, and that he intended to eavesdrop on a woman's conversations. Smith declined to provide assistance. Marquez subsequently told Smith that someone else was going to assist him in the scheme.

Plaintiffs claim that they did not realize that Smith was actually Silmare, a wiretapping device manufacturer, until the weekend before the trial began. They discovered from Smith's son that Smith was on vacation and would not return until September.

Moreover, Plaintiffs admit that Smith's importance was discovered by them during trial. They indicate that they informed the court of this development, but the record shows that they did not properly request the court for additional time to procure Smith's testimony. It is clear from Plaintiffs' own statement that this evidence was available to them before trial. The appropriate course of conduct would have been to request the court's aid in allowing time to locate Smith. If the court denied that request, then the appropriate route would be appeal. Therefore, the district court did not abuse its discretion in denying Plaintiffs' Rule 60(b) motion.

For the reasons above stated, we REVERSE the district court's decision to grant a directed verdict in favor of Marquez and REMAND for further proceedings. We REVERSE the district court's decision to deny Plaintiffs' punitive damages relief and REMAND for further proceedings. We AFFIRM the district court's denial of both parties' Rule 60(b) motions for new trial. The remainder of the judgment, that is, the jury's determination of Paige's liability and the compensatory damages awarded in favor of Scutieri and Simmons, is not to be disturbed.