SUMMARY ORDER
Plaintiffs, police officers in the Town of Harrison, New York (the “Town”), allege that the Town, its police chief, and a police captain (collectively, “defendants”) violated plaintiffs’ First, Fourth, and Fourteenth Amendment rights, see 42 U.S.C. § 1983, and Title III of the Omnibus Crime Control and Safe Streets Act (Title III), 18 U.S.C. § 2520, by installing a video surveillance camera in the police department locker room. They now appeal an award of summary judgment in favor of defendants, a ruling we review de novo. Oll *652 man v. Special Bd. of Adjustment No. 1063, 527 F.3d 239, 245 (2d Cir.2008). We will affirm only if the record, viewed in the light most favorable to the nonmoving party, reveals no genuine issue of material fact. See Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We assume the parties’ familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.
1. Fourth Amendment
Although defendants adduced considerable evidence that the challenged camera provided no ongoing video surveillance of the locker room, plaintiffs submit that certain contradictions in the evidence would permit a reasonable jury to conclude that they were searched, thereby precluding an award of summary judgment. We disagree. Relying on two still photographs taken by the camera, neither of which depicts any person, and testimony from Andrew Natarelli, who installed the camera, stating that he tested the camera by observing Sergeant Dominick Pascale, who is not a party to this case, plaintiffs argue that the camera was operational and that its field of view was broader than defendant Anthony Marraccini’s locker. Viewed in the light most favorable to the plaintiffs, this evidence establishes only the “potential for an invasion of privacy.” United States v. Karo, 468 U.S. 705, 712, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984). It does not show that plaintiffs’ expectation of privacy in the workplace locker room was ever infringed.[1] See United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); Sheppard v. Beerman, 18 F.3d 147, 152 (2d Cir.1994).
Although plaintiffs acknowledge that defendants never used the camera to record them, they argue that defendants David Hall and Marraccini admitted to using the camera to view them live. See Marraccini Aff. ¶ 27; Hall Aff. ¶4; Nardi Aff. II2. The statements cited by plaintiffs in fact express only defendants’ tactless responses to the discovery of the camera; in context, they cannot reasonably be construed as admissions that defendants ever actually viewed plaintiffs on camera.
Defendants have, in fact, persistently denied ever observing plaintiffs on camera. Plaintiffs now argue that evidence suggesting the camera worked on two occasions sufficiently contradicts defendants’ statements that the camera “never worked” or was “never hooked up” to support an inference of constitutionally proscribed viewing. Appellants’ Br. at 24. In the district court, however, plaintiffs did not contest that (a) the camera’s motion sensor never functioned as intended, or that (b) Marraccini never accessed the DigiVue software on his computer. On this record, we identify no inconsistency that would preclude summary judgment. Defendants’ later statements that the camera did not operate as intended merely clarified their earlier assertions about the camera’s non-functionality. Moreover, plaintiffs declined to inspect Marraccini’s computer for possible evidence of either DigiVue access or locker room viewing. While such an inspection may have been inconclusive, in its absence, plaintiffs’ contention that the computer was used to violate their Fourth Amendment rights reduces to speculation. Because plaintiffs failed to adduce sufficient admissible evidence to raise a genuine issue of material fact about whether they were ever observed on camera, the district *653 court properly entered summary judgment in favor of defendants on the Fourth Amendment claim.[2]
2. Title III
Plaintiffs submit that evidentiary contradictions as to the audio recording capacity of the locker room camera precluded summary judgment on their Title III claim. See 18 U.S.C. § 2520. Even assuming that a jury were to resolve this factual dispute in favor of plaintiffs, finding that the camera was capable of recording sound, plaintiffs were still required to adduce some evidence that their communications were, in fact, intercepted to defeat summary judgment. See id. § 2520(a); see also DIRECTV, Inc. v. Minor, 420 F.3d 546, 549 (5th Cir.2005) (noting propriety of summary judgment when Title III plaintiff presents no evidence that device was actually used to intercept communications); Gross v. Taylor, 1997 WL 535872, at *4-*5 (E.D.Pa. Aug.5, 1997) (holding that plaintiffs lacked standing under Title III because they could not show that “an interception actually took place”). Citing Scutieri v. Paige, 808 F.2d 785 (11th Cir.1987), plaintiffs contend that a reasonable jury could infer interception from the totality of the circumstances. Scutieri, however, does not support plaintiffs’ argument because the defendant in that case conceded that an interception actually occurred. Id. at 790. Because plaintiffs have adduced no evidence that their communications were intercepted, we conclude that the district court properly entered summary judgment on the Title III claim.
3. First Amendment
Finally, plaintiffs submit that they were entitled to pursue a First Amendment retaliation claim because their efforts to persuade the PBA to report the challenged surveillance to the district attorney demonstrate that they “spoke as ... citizen[s] on a matter of public concern.” Garcetti v. Ceballos, 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). “Whether an employee’s speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record.” Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir.1999) (citing Connick v. Myers, 461 U.S. 138, 147-48 & n. 7, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). In making this determination, the speaker’s motive is relevant, see Lewis v. Cowen, 165 F.3d at 163-64, but “not dispositive,” see Sousa v. Roque, 578 F.3d 164, 173-74 (2d Cir.2009). “An employee who complains solely about his own dissatisfaction with the conditions of his own employment is speaking ‘upon matters only of personal interest.’ ” Id. (quoting Connick v. Myers, 461 U.S. at 147, 103 S.Ct. 1684).
Plaintiffs’ efforts to persuade the PBA to file a criminal complaint do not manifest the sort of public concern evident in allegations of public corruption. See Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir.2003). The harm alleged in this case affected only the Town’s police officers in the conditions of their employment. These conditions, unlike corruption, had no bearing on how the police department operated in its public enforcement of the law. Even though plaintiffs claim that their advocacy was on behalf of the entire PBA membership, their speech did not implicate First Amendment rights. As this court explained in Ruotolo v. City of New York, “[a] public employee may not transform a *654 personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run. A generalized public interest in the fair or proper treatment of public employees is not enough.” 514 F.3d 184, 190 (2d Cir.2008) (internal quotation marks and citation omitted). We therefore conclude that the district court correctly entered summary judgment on plaintiffs’ First Amendment retaliation claim.
We have considered plaintiffs’ other arguments on appeal and conclude that they are without merit. Accordingly, we AFFIRM the judgment of the district court.

. We assume arguendo, as the district court did, that plaintiffs had a legitimate expectation of privacy when changing clothes in the subject locker room. See DeVittorio v. Hall, 589 F.Supp.2d 247, 257 (S.D.N.Y.2008).

. Our ruling, based on plaintiffs' failure to adduce prima facie factual support for their claim, does not imply that their factual allegations, if proved, would constitute a violation of the Fourth Amendment. On that question, we express no view.