[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-14810
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-20423-KMM-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ANGEL BARROSO,

Defendant - Appellant.

_____

No. 16-14811
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-20423-KMM-4

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RAFAEL UBIETA,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(January 9, 2018)

Before MARTIN, JORDAN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

After being found guilty by a jury of wire fraud and conspiracy to commit wire fraud, Angel Barroso and Rafael Ubieta appealed their convictions and sentences. We affirmed. *See United States v. Ubieta*, 630 F. App'x 964 (11th Cir. 2015). The defendants then filed a motion for a new trial in the district court pursuant to Federal Rule of Criminal Procedure 33(b)(1), alleging that they had uncovered new evidence pertaining to two of the government's witnesses that would likely have led to a different result if it had been produced to them before trial. They also asserted that the government had committed *Brady*[1] and *Giglio*[2] violations which warranted a new trial, and sought an evidentiary hearing to determine the effect of the information that had allegedly been withheld from

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).
[2] *Giglio v. United States*, 405 U.S. 150 (1972).

2

them. The district court, however, found the defendants' arguments to be without merit. We agree, and affirm.

## I

The facts of the case are amply laid out in our opinion on direct appeal. *See Ubieta*, 630 F. App'x at 968-81. We limit the present discussion of the facts to those relevant to the present appeal.

In January of 2013, following a week-long trial, Mr. Barroso and Mr. Ubieta were convicted of wire fraud and conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349, and were sentenced to 210 and 240-month prison terms, respectively. The fraudulent scheme involved the use of straw purchasers to submit false mortgage loan applications to secure financing, take title to residential properties, and improperly use and disburse mortgage loan proceeds for unapproved purposes.

One of the witnesses for the government, Julio Diaz, had previously pled guilty to fraud and had served a 14-month prison term for his involvement with Mr. Barroso relating to the purchase of a different property in 2006. Mr. Diaz testified at the trial of Mr. Barroso and Mr. Ubieta, however, that he did not knowingly purchase any other properties under this type of scheme. The government produced evidence that someone posing as Mr. Diaz purchased a property at 185 SW 7th Street (the "7th Street" property), and the government

3

portrayed Mr. Diaz as an unwitting victim of the defendants' fraudulent scheme as to this property, rather than as a knowing participant. This contrasted with the superseding indictment, which alleged that Mr. Diaz acted as a straw buyer and allowed his identity and credit to be used for the purchase of the property. The government stated that its investigation revealed, post-indictment, that Mr. Diaz was in fact not a knowing participant in the fraudulent scheme.

We addressed this issue in the direct appeal, concluding that there had been no constructive amendment or variance to the indictment. We also noted that, "[r]egardless of whether [Mr.] Diaz was a consenting straw buyer who agreed to purchase the property at 185 SW 7th Street – as alleged in the indictment – or a victim of identity theft – as he and the government argued at trial – the essential elements of wire fraud and conspiracy were unchanged." *Id*. at 980.

The defendants maintain that they discovered new evidence showing that a home equity line of credit ("HELOC") was taken out in Mr. Diaz's name on this property in January 2008, and that this newly discovered evidence demonstrates that Mr. Diaz's testimony at trial – that he was an unwitting victim of the fraud – is false. They argue that this new evidence was undoubtedly known to the government, that the government withheld this information from them, and that under *Brady* and *Giglio*, they are entitled to a new trial.

4

A second government witness, William Hartnett, a co-conspirator who cooperated with the government, testified that he was at the closing for the 7th Street property and that Mr. Ubieta gave him instructions on how to handle the loan proceeds. He also testified that he paid Jose Martinez, the son-in-law of the seller of the 7th Street property, a $30,000 commission in connection with that transaction. The defendants claim that newly discovered evidence shows that Mr. Martinez attended the 7th Street property closing, that Mr. Ubieta may not have attended the closing, and that Mr. Martinez stated in a pre-trial interview that the $30,000 he received was a loan (not a commission). They assert that this evidence also establishes *Brady* and *Giglio* violations and warrants a new trial.

## II

We review the denial of a motion for a new trial based on newly discovered evidence for an abuse of discretion. *See United States v. Vallejo*, 297 F.3d 1154, 1163 (11th Cir. 2002). We review alleged *Brady* or *Giglio* violations *de novo*, *see United States v. Stein*, 846 F.3d 1135, 1145 (11th Cir. 2017), *petition for cert. filed*, no. 17-250 (Aug. 14, 2017), but we review the denial of a motion for a new trial based on these alleged *Brady* or *Giglio* violations for an abuse of discretion. *See id*. Finally, we also review the district court's denial of an evidentiary hearing for an abuse of discretion. *See United States v. Sweat*, 555 F.3d 1364, 1368 (11th Cir. 2008). An evidentiary hearing is not required where the record contains all the

evidence needed to dispose of each of the grounds asserted as a basis for a new trial. *See United States v. Scrushy*, 721 F.3d 1288, 1305 n.30 (11th Cir. 2013).

Motions for a new trial based on newly discovered evidence are highly disfavored and should be granted only with great caution. *See United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006). The defendants bear the burden of justifying a new trial. *See id.*

In order to succeed on a motion for a new trial based on newly discovered evidence, the defendants must show that (1) the evidence was in fact discovered only after trial; (2) their failure to discover the evidence was not due to a lack of due diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to issues before the court; and (5) the evidence is such that a new trial would probably produce a different result. *See United States v. Barsoum*, 763 F.3d 1321, 1341 (11th Cir. 2014). Failure to show any one of these elements is fatal to a motion for a new trial. *See United States v. Starrett*, 55 F.3d 1525, 1554 (11th Cir. 1995).

These elements are identical to those required to succeed on a motion for a new trial based on newly discovered evidence in a civil trial under Federal Rule of Civil Procedure 60(b)(2). *See Scutieri v. Paige*, 808 F.2d 785, 793 (11th Cir. 1987). In that context, we have held that evidence contained in public records at the time of trial cannot be considered newly discovered evidence. *See id.* at 794.

Similarly, the former Fifth Circuit has previously determined in a criminal case that evidence contained in the public records at the time of trial could be discovered by due diligence, and thus did not warrant a new trial. *See Green, Moore & Co. v. United States*, 19 F.2d 130, 131 (5th Cir. 1927).[3]

Under *Brady*, the suppression by the prosecution of evidence favorable to the defense violates the defendant's due process rights where the evidence is material either to guilt or punishment, irrespective of the good or bad faith of the prosecution. *See Brady*, 373 U.S. at 87. Evidence is favorable to the accused for *Brady* purposes if it is exculpatory or impeaching. *See United States v. Naranjo*, 634 F.3d 1198, 1212 (11th Cir. 2011). *Brady* evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). The burden to establish a *Brady* violation lies with the defendant. *See United States v. Esquenazi*, 752 F.3d 912, 933 (11th Cir. 2014). And the government is not obliged to provide a defendant with information he already has or could obtain with any reasonable diligence. *See Stein*, 846 F.3d at 1146.

To establish a violation under *Brady*, a defendant must show that (1) the government possessed evidence favorable to him; (2) he did not possess the

---

[3] Decisions of the former Fifth Circuit prior to October 1, 1981 are binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to him, there is a reasonably probability the outcome would have been different. *See Vallejo*, 297 F.3d at 1164.

*Giglio* defines a specific subset of *Brady* violations. *See Ford v. Hall*, 546 F.3d 1326, 1331 (11th Cir. 2008). *Giglio* error occurs when the undisclosed evidence demonstrates that the prosecution used perjured testimony in its case, and that the prosecution either knew or should have known of the perjury. *See id.* To succeed on a *Giglio* claim, the defendant must demonstrate that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material. *See Vallejo*, 297 F.3d at 1163-64. The materiality element is satisfied "if the false testimony could in any reasonably likelihood have affected the judgment of the jury." *Giglio*, 405 U.S. at 154. *See also Ford*, 546 F.3d at 1332.

### III

The district court found no merit in any of the defendants' arguments. Nor do we. Neither the evidence relating to Mr. Diaz nor the evidence relating to Mr. Hartnett establish a *Brady* or a *Giglio* violation or warrant a new trial.

First, none of the evidence can be considered newly discovered. The HELOC taken out in Mr. Diaz's name was available on the public website for the

8

Miami-Dade Clerk of Courts, and the defendants "discovered" the evidence during a post-trial public records search. As illustrated by *Green, Moore & Co.* and *Scutieri*, we do not consider evidence available in the public records to be newly discovered. *See Green, Moore & Co.*, 19 F.2d at 131; *Scutieri*, 808 F.2d at 793. The defendants assert that they had no need to conduct such a search because they believed Mr. Diaz would be presented as a willing participant in the fraud. But that is not accurate. Ten days prior to the start of the trial, the government provided to the defendants a report of an interview with Mr. Diaz detailing his claim that he had no knowledge of the purchase of any property in his name. That report provided evidentiary support for Mr. Diaz's contention that he was the victim of identity theft. Additionally, five days before trial, Mr. Barroso filed a motion *in limine* that expressly acknowledged Mr. Diaz's claims. And the government's opposition to that motion *in limine* set forth its position and the evidentiary support underlying it. Thus, the defendants knew well ahead of time that Mr. Diaz would not be presented by the government as a willing participant in the fraud.

Likewise, the interview in which Mr. Hartnett claimed that the $30,000 was a loan, not a commission, was provided to the defense during discovery. And although the defendants present Mr. Martinez's presence at the 7th Street closing as newly discovered evidence, it is exactly what Mr. Hartnett testified to during trial. The defendants' assertions to the contrary simply are not valid. And though

9

the defendants claim that post-trial discoveries show that Mr. Ubieta *may not* have attended the closing, they provide no such "newly discovered evidence" showing that he did not in fact attend the closing. The district court did not abuse its discretion in denying a new trial based on this unsubstantiated claim.

Second, and related to the first prong, all of the evidence the defendants claim is newly discovered could have, and should have, been discovered through due diligence. For example, even a cursory review of the public records would have revealed the existence of Mr. Diaz's HELOC.

Third, even if the evidence were new, and undiscoverable with due diligence, none of it actually refutes any of the evidence of guilt produced at trial. Even if it is true that Mr. Diaz took out the HELOC on the 7th Street property, it does not contradict his testimony that he was unaware that his identity was unlawfully used to purchase the property. And even if the defendants could show that the HELOC directly related to the purchase and closing, the only effect would be to impeach Mr. Diaz's testimony that he was an unwitting victim. But as we said in the direct appeal, "the essential elements of wire fraud and conspiracy [remain] unchanged." *Ubieta*, 630 F. App'x at 980. Thus, none of the "newly discovered evidence" undermines the jury's findings of guilt, and it cannot survive the third prong's requirement that the evidence be more than simply cumulative or impeaching. As for Mr. Hartnett's testimony, the defendants have failed to even

10

provide any newly discovered evidence, much less show that it is not just cumulative or impeaching.

Fourth, none of the evidence goes to issues material to the defendants' guilt or innocence. Whether or not Mr. Martinez or Mr. Ubieta attended the 7th Street property closing, whether or not Mr. Diaz took out a HELOC on the property, and whether or not the $30,000 that Mr. Hartnett gave to Mr. Martinez was a loan or a commission, the fraudulent nature of the entire scheme was attested to by numerous witnesses, involved numerous purchases of property, and was proven by a substantial volume of evidence. This "newly discovered evidence" does not affect that evidence of guilt.

Finally, given the overwhelming evidence of the defendants' guilt regarding the entire scheme, as described in detail in the direct appeal, there is no probability that a new trial would produce a different result. As the district court stated, the "[d]efendants' argument that the Government's case would crumble without Diaz's testimony is rendered impuissant by the overwhelming evidence of Defendants' guilt." *United States v. Ubieta*, 2016 WL 8715673, at \*2 (S.D. Fla. June 17, 2016).

## IV

The defendants' claims of *Brady* and *Giglio* violations do not fare any better. In addition to the HELOC being publicly available and discoverable with any due diligence, which by itself dooms the *Brady* claim, there is no evidence the

11

government possessed that information prior to trial, much less suppressed it. The defendants argue that it is inconceivable that the government was not aware of it before trial, but they claim they were unaware of it too. We note that the charged conspiracy occurred between February and October 2007, and the HELOC was not executed until January 2008, so it is not implausible that the government lacked knowledge. The defendants have provided no evidence that the government in fact had knowledge of the HELOC, and, as the district court recognized, it would strain credulity to conclude that the government would withhold and suppress information that was placed in a public records website which the defendants could easily access.

Additionally, the defendants provide no evidence that any of Mr. Diaz's or Mr. Hartnett's testimony is actually false. They provide evidence which, at best, may call into question or impeach the credibility of each witness. But there is nothing which approaches clear evidence of false testimony provided by a government witness which could lead us to conclude that the government knowingly presented, or failed to correct, perjured testimony. The defendants' claims of *Giglio* violations fail.

## V

The district court did not abuse its discretion in denying the defendants' motion for a new trial based on newly discovered evidence, or on *Brady* or *Giglio*

12

violations. It also did not abuse its discretion in denying the defendants an evidentiary hearing. We therefore affirm.

**AFFIRMED.**