Janet **HARDUVEL, Individually and as Personal Representative of the Estate of Theodore Harduvel, Deceased, and on behalf of his minor child, Christina Harduvel, Plaintiff,**

v.

**GENERAL DYNAMICS CORP., Defendant.**

**No. 84–1450–Civ–T–10.**

United States District Court, M.D. Florida.

Aug. 15, 1992.

Howard M. Acosta and George K. Rahdert, Rahdart, Acosta & Dickson, St. Petersburg, Fla., David W. Holman and Wayne Fisher, Fisher, Gallagher, Perrin & Lewis, Houston, Tex., for plaintiff.

T. Paine Kelly, Jr., Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., Frank Finn and James L. Johnson, Thompson & Knight, Dallas, Tex., Mark A. Dombroff,

Hughes Humbard & Reed, Washington, D.C., for defendant.

GAGLIARDI, Senior District Judge.

The plaintiff moves for a new trial, pursuant to Federal Rule of Civil Procedure 60(b), based on newly discovered evidence, misconduct, and "fraud on the court." *See* Fed.R.Civ.P. 60(b)(2), 60(b)(3), 60(b)(6). The motion is denied in all respects.

## I. PROCEDURAL BACKGROUND [1]

The plaintiff's product liability claim arises from her husband's fatal accident at the controls of an F–16A fighter plane on November 15, 1982. In April, 1987, the case was tried to a jury, which awarded 3.1 million dollars in damages against General Dynamics Corporation (hereinafter "General Dynamics") based on the plaintiff's claims of failure to warn and negligence and strict liability in the design and manufacture of the aircraft.

General Dynamics moved, under Rule 50(b), for judgment notwithstanding the verdict and, in the alternative, for a new trial pursuant to Rule 59. In a memorandum decision issued on September 30, 1987, this court denied the motions, but set aside the jury verdict for failure to warn. Harduvel's motion for pre-judgment interest was also denied at that time.

Harduvel appealed this court's decision denying pre-judgment interest and the ruling setting aside the jury verdict on failure to warn. General Dynamics cross-appealed, challenging, *inter alia*, the underlying judgment and this court's rulings on its motions for a new trial and j.n.o.v.

On July 31, 1989, the Eleventh Circuit, in an opinion authored by Associate Justice Powell,[2] reversed and remanded with instructions to enter judgment in favor of General Dynamics. Two principal determinations buttressed the Court's holding. First, Justice Powell found that the evidence supporting the claim of defective manufacture in Harduvel's F–16A was insufficient. Second, the Court held that the design defect claim was precluded by the Supreme Court's most recent formulation of the government contractor defense, as set forth in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988).[3] The Court later denied Harduvel's petition for rehearing and rehearing *en banc*. In accordance with the Eleventh Circuit ruling, this court entered judgment on January 8, 1990.

The following month, before her petitions to the United States Supreme Court for certiorari and rehearing were denied,[4] Harduvel filed an action for fraud and negligent misrepresentation in Texas state court. General Dynamics removed the action to the United States District Court for the Southern District of Texas. Upon reconsidering its initial order granting summary judgment in favor of General Dynamics, the district court concluded anew that *res judicata* barred Harduvel's claims, since the "crux" of the claims had already been presented to both the Eleventh Circuit and the United States Supreme Court. *See Harduvel v. General Dynamics*, No. H–90–993 (S.D.Tex. Dec. 11, 1990). Harduvel elected not to appeal.

Finally, on January 7, 1991, Harduvel filed the instant motion for relief from this

---

1. This opinion assumes familiarity with the facts underlying Janet Harduvel's product liability action. For a more thorough recitation of the facts, *see Harduvel v. General Dynamics Corp.*, 878 F.2d 1311 (11th Cir.1989), *cert. denied*, 494 U.S. 1030, 110 S.Ct. 1479, 108 L.Ed.2d 615 (1990).

2. Retired, sitting by designation.

3. As Justice Powell points out, the decision in *Boyle* was rendered some nine months after the trial. The authoritative statement of the government contractor defense in the Eleventh Circuit at the time of trial was contained in *Shaw v.*

*Grumman Aerospace Corp.*, 778 F.2d 736 (11th Cir.1985).

4. The petition for certiorari was denied on March 19, 1990, 494 U.S. 1030, 110 S.Ct. 1479, 108 L.Ed.2d 615. On May 14, 1990, 495 U.S. 942, 110 S.Ct. 2199, 109 L.Ed.2d 525, the Court denied Harduvel's petition for rehearing. Harduvel appended to her petition for rehearing twenty of the documents forming the basis of the instant motion. The plaintiff had obtained the documents in FOIA responses from the United States Air Force in June, 1987, and February, 1988.

court's judgment pursuant to Rule 60(b). Over two thousand documents pertaining to the F–16A and related aircraft were appended. The plaintiff also filed a Motion for a Hearing and a Motion to Inquire.

## II. DISCUSSION

### A. Res Judicata and Related Doctrines

General Dynamics argues that principles of res judicata bar Harduvel's Rule 60(b) motion for a new trial. See, generally, Defendant's Response to Plaintiff's Motion for a New Trial at 4, et. seq. The defendant contends that the preclusive effect of the Texas fraud judgment and the Eleventh Circuit opinion in this case bar Harduvel's motion for relief from judgment, since the instant claims were or could have been raised in the earlier proceedings. Both contentions are without merit.

### 1. Preclusive Effect of Texas Decision [5]

It is a hackneyed truism that "res judicata does not preclude a litigant from making a direct attack upon the judgment before the court which renders it." 1B J. Moore, Federal Practice, § 0.407, at 282 (2d ed. 1991). In other words, a party may introduce evidence, normally extrinsic in nature, "with the direct and primary objective of modifying, setting aside, canceling or vacating, or enjoining the enforcement of the judgment." 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure at § 4406 (citing Intermill v. Nash, 94 Utah 271, 75 P.2d 157 (1938)).

■ Harduvel's Rule 60(b) motion represents a direct attack on the prior judgment of this court. The only jurisdiction in which relief from the January 8, 1990, judgment is available is the Middle District of Florida. See 11 C. Wright & A. Miller,

Federal Practice and Procedure at § 2865. It is of no consequence that the Texas fraud action, a collateral attack on the judgment of this court, was properly decided adversely to the plaintiff under the doctrine of res judicata.[6] See Watts v. Pinckney, 752 F.2d 406, 410 (9th Cir.1985) (res judicata bars collateral, and not direct, attacks on final judgments). The res judicata effect of the Texas fraud judgment cannot preclude Harduvel from making a direct attack upon the judgment of this court in the form of a Rule 60(b) motion. See Woodrum v. Southern Ry. Co., 750 F.2d 876, 883 (11th Cir.1985) ("practical effect of [60(b)] is to lift the bar of res judicata in certain cases"); Watts v. Pinckney, 752 F.2d at 410 (60(b) motion constituted proper direct attack, where appellate court reversed and remanded, and res judicata did not apply); Jordan v. Gilligan, 500 F.2d 701, 710 (6th Cir.1974).

### 2. Preclusive Effect of Eleventh Circuit Decision: Law of the Case Doctrine

■ Similarly, the defendant cannot rely on the preclusive effect of the Eleventh Circuit decision to bar Harduvel's Rule 60(b) claim. Since the present Rule was drafted, the Supreme Court has held that a federal district court may hear a Rule 60(b) motion without leave from the appellate court. See Standard Oil Co. of California v. United States, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976) (appellate court's mandate does not bar trial court from disturbing judgment entered in accordance with mandate). See also, Lairsey v. Advance Abrasives Co., 542 F.2d 928, 932 (5th Cir.1976).[7]

The trial court is free to hear the motion, provided that appropriate deference is accorded to the rulings of the appellate court. The "district judge is not free to flout the

---

**5.** "The federal common law of res judicata determines the preclusive effect of a federal court judgment on a subsequent federal court case." Heller v. Plave, 743 F.Supp. 1553, 1566, n. 17 (S.D.Fla.1990).

**6.** General Dynamics seeks to use the Texas judgment, a ruling based entirely on the res judicata effect of this litigation, to preclude Harduvel's Rule 60(b) motion in this case. General Dynamics cannot use the preclusive effect of this

action to bar a direct attack on the judgment of this action through the conduit of another jurisdiction.

**7.** The Eleventh Circuit has accepted as binding precedent all Fifth Circuit cases handed down prior to the close of business on September 30, 1981. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

decision of the appellate court as far as it goes, but he should be free to consider whether circumstances not previously known to either court compel a new trial." 11 C. Wright & A. Miller, Federal Practice and Procedure at § 2873.

In other words, all issues expressly or impliedly considered on appeal remain the law of the case, and may not be disturbed, absent highly unusual circumstances. *See Gulf Coast B. & S. Co. v. International Bro. of E.W., No. 480,* 460 F.2d 105 (5th Cir.1972) (where all issues were expressly or impliedly presented to and disposed of by appellate court, district court lacked power to alter judgment); *Ritter v. Smith,* 811 F.2d 1398, 1404 (11th Cir.1987) (district court may hear 60(b) motion without leave, but "[t]he mandate of an appellate court to a district court must be scrupulously adhered to by the district court on remand as the law of the case in all but the most extraordinary of situations").[8] In short, although the Eleventh Circuit mandate has no preclusive effect, the holdings on appeal adumbrate the parameters within which this court evaluates the appended documents.

### B. *Jurisdiction and Applicable Law*

This court has jurisdiction to consider the plaintiff's motion under applicable principles of federal law. *See Wilson v. Thompson,* 638 F.2d 801, 803 (5th Cir. Unit B Mar. 1981) (district court retains jurisdiction to consider Rule 60(b) motion filed after perfected appeal of original decision); *Ope Shipping Ltd. v. Underwriters at Lloyds,* 100 F.R.D. 428, 435 (S.D.N.Y.1983) (district court may grant relief from judgment of circuit court pursuant to Rule 60(b)). Federal law controls the disposition of these issues. The "grounds and the procedure for setting aside a federal judgment are entirely a matter of federal law, on which state law may be disregarded." 11 C. Wright & A. Miller, Federal Practice and Procedure § 2853 (1973).

### C. *Timeliness*

Rule 60(b) sets forth two tests of "timeliness." The Rule states, in pertinent part, that the "motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken." Fed.R.Civ.P. 60(b). *Both* limitations—"one year" and "reasonableness"—apply to Harduvel's claims under subsections (2) and (3), while her 60(b)(6) claim is subject only to the requirement of "reasonableness." *See White v. American Airlines,* 915 F.2d 1414, 1425 (10th Cir. 1990) ("a [60(b)] motion is not timely merely because it has been filed within one year of the judgment"). With respect to subsections (2) and (3), the court must determine first whether the motion was filed within the outside limitation of one year and, if so, whether the time of filing was "reasonable." Under the circumstances of this case, the latter question is closer than it may appear at first blush.

#### 1. One-year Limitation Period

█ Under the fairest interpretation of the "one year" requirement, the plaintiff's actions pass muster. Although Harduvel did not file within one year of the initial judgment against General Dynamics, she did file within a year of the judgment entered on remand. Under the holding of *Transit Casualty Co. v. Security Trust Co.,* 441 F.2d 788, 791 (5th Cir.1971), *cert. denied,* 404 U.S. 883, 92 S.Ct. 211, 30 L.Ed.2d 164 (1971), filing within one year of the judgment on remand is sufficient to satisfy the statutory mandate, provided that the appeal results in a "substantive change" to the party's legal position in the case at bar. *See* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2866. The judgment on remand in this case created a "substantive change" in Harduvel's legal position sufficient to warrant applying the *Transit Casualty* rule. Since Harduvel filed within one year of the judgment on remand, she meets the first requisite of

---

**8.** The *Ritter* court did find that "extraordinary" circumstances existed where the Supreme Court declared constitutional a statute formerly declared unconstitutional by the appellate court.

"timely" filing.[9]

## 2. "Reasonable" Filing

■ Rule 60(b) requires the court to determine independently whether the movant's filing date is "reasonable." "Reasonableness" can only be evaluated by reference to the circumstances of each case. *See Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir.1981) ("reasonable time" depends on facts of each case, considering especially interest in finality, reason for delay, ability of movant to learn of grounds for motion); *Matter of Emergency Beacon Corp.*, 666 F.2d 754, 760 (2d Cir.1981).

Most courts utilize a two-part analysis to evaluate "reasonableness," taking into account the reasons for the delay and the potential for prejudice to the non-movant. *See* 11 C. Wright & A. Miller, Federal Practice and Procedure at § 2866. *See also U.S. v. Boch Oldsmobile*, 909 F.2d 657, 661 (1st Cir.1990); *In re Pacific Far East Lines, Inc.*, 889 F.2d 242, 249 (9th Cir.1989). First, the plaintiff must offer a "good reason" for any delay in filing. Second, the court must evaluate any potential for prejudice to the non-movant, which may result from reopening the judgment. *See Smith v. Jackson Tool & Die, Inc.*, 426 F.2d 5, 8 (5th Cir.1970).

■ Harduvel contends that filing on January 7, 1991, was "reasonable" in light of her numerous attempts at securing relief through other procedural channels.[10] *See* "Procedural Background", *supra*. Several other federal courts have faced factually analogous situations, involving movants who pursued diverse avenues of relief before filing under Rule 60(b). *See, e.g., Harris v. Union Elec. Co.*, 846 F.2d 482 (8th Cir.1988); *Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir.1984) (60(b) motion filed within eleven weeks of Supreme Court decision to deny certiorari was "clearly within a reasonable time after the date on which it was finally determined that the judgment ... would be vacated"); *Pierce Oil Corporation v. United States*, 9 F.R.D. 619, 621 (E.D.Va.1949) (allowing eighteen-month delay, where plaintiff pursued potentially dispositive remedies in form of petition for certiorari and Rule 54(b)). In each case, however, the movant pursued and exhausted channels of appeal which, if successful, would render moot the demand for a new trial. *Cf.* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2866 ("fact that an appeal had been pending may be considered in determining whether a motion was made in a reasonable time").

By contrast, Harduvel pursued related claims in Texas state court after exhausting appellate review in the instant products action.[11] Although, as Harduvel avers, the fraud claims potentially offered relief beyond the reopening of the judgment, she does not persuade the court that she sought relief different in kind, rather than pursuing diverse paths to the singular end of monetary compensation.

Harduvel's actions appear especially delinquent in light of her counsel's assertion that he began to receive responses to FOIA requests in June, 1987, well before he had reason to know of the Eleventh Circuit's decision to reverse. *See* Plaintiff's Memorandum Brief at 3; Exhibits 00001–01221, 01222–01559. The material supporting this motion entered the plaintiff's arsenal long ago and, as the foregoing discussion suggests, she was equally motivated at that time to pursue the form of relief she now seeks from Rule 60(b). *See Lairsey v. Advance Abrasives Co.*, 542 F.2d at 931 (rulemakers intended for court to consider

---

9. On January 8, 1990, this court entered judgment on remand. Harduvel filed the instant motion in Tampa, Florida, on January 7, 1991.

10. Since Harduvel filed just one day before the outer limitation of one year, she may bear a concomitantly heavier burden to show good cause. At least one court has adopted this view. *See Amoco Overseas Oil v. Compagnie Nationale Algerienne*, 605 F.2d 648, 656 (2d Cir.1979) ("as the delay in making the motion approaches one year there should be a corresponding increase in the burden that must be carried to show that the delay was 'reasonable' ").

11. The plaintiff exhausted appellate review in the instant action on May 14, 1990, when the Supreme Court denied her petition for rehearing. Harduvel chose not to pursue the Texas action after the December 11, 1990, summary judgment ruling.

"practical abilities of litigants to become aware of possible grounds for 60(b) relief"). In accord with the command of judicial economy underlying these rules of final judgment, the plaintiff should have pursued the instant Rule 60(b) motion while the independent fraud action was pending in Texas.

If, notwithstanding this court's reservations, the delay was adequately justified, Harduvel's claim of "reasonableness" cannot be defeated on the ground of "prejudice" to General Dynamics. The defendant faces only the hardship attending further litigation in an already protracted lawsuit and the prospect of an unfavorable result. These are not reasons sufficient to render the filing "untimely." *See Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir.1984) (no prejudice resulting from protracted proceedings, time and expense of new trial, following vacated judgment); *Smith v. Widman Trucking & Excavating*, 627 F.2d 792, 798 n. 7 (7th Cir.1980) ("prejudice" must be caused by impairment of party's ability to litigate matter, rather than mere inconvenience surrounding all decisions to vacate).

Although this case presents a close question for timely filing, the court passes to a consideration of the substantive merits of Harduvel's motion. *See Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1346 (5th Cir. 1978); *Serio v. Badger Mutual Ins. Co.*, 266 F.2d 418, 421 (5th Cir.1959) ("reasonableness" rule "to be liberally construed in order that judgments may reflect the true merits of a case").

### D. *Merits of Plaintiff's Rule 60(b) Motion*

#### 1. *Rule 60(b)(2): "Newly Discovered" Evidence*

Under Rule 60(b)(2), a party may obtain relief from a final judgment on the basis of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." [12] Fed.R.Civ.P. 60(b)(2). The Eleventh Circuit has adopted the five-part test used in many jurisdictions to determine whether "newly discovered" evidence warrants granting a new trial:

> (1) the evidence must be newly discovered since the trial; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that a new trial would probably produce a new result.

*Scutieri v. Paige*, 808 F.2d 785, 793 (11th Cir.1987). As the *Scutieri* court cautioned, "[a] motion for a new trial under Rule 60(b)(2) is an extraordinary motion and the requirements of the rule must be strictly met." *Id.* The movant bears the burden of demonstrating that the requirements have been satisfied. *Stilwell v. Travelers Insurance Company*, 327 F.2d 931 (5th Cir.1964). If any one of the five elements is not satisfied, the motion fails. *Raymond v. Raymond Corp.*, 938 F.2d 1518, 1527 (1st Cir.1991).

For the purpose of evaluating a Rule 60(b) motion, the court takes as true the movant's factual assertions. *Kerwit Med. Products v. N & H Instruments*, 616 F.2d 833, 836 (5th Cir.1980); *United States v. Cirami*, 563 F.2d 26, 28 (2d Cir.1977).[13] The court concludes that the plaintiff has not met her burden of demonstrating that new evidence exists which would alter the outcome of this case.

#### a. *Evidence Discovered Since Trial*

Any evidence that was in the plaintiff's possession during or prior to the trial cannot be considered "newly discovered" within the meaning of Rule 60(b)(2). *Johnson Waste Materials v. Marshall*, 611 F.2d 593, 597 (5th Cir.1980). Some courts impose the additional requirement that the evidence must have come into existence

---

**12.** That is, within ten days following judgment.

**13.** Harduvel offers little to support her 60(b)(2) claim. She makes the bald assertion that the outcome would surely be different in light of her new discoveries and states, without much support, that she worked with due diligence to discover the documents now before the court.

prior to or at the time of trial.[14] *See NLRB v. Jacob E. Decker & Sons,* 569 F.2d 357, 364 (5th Cir.1978); *Davis by Davis v. Jellico Community Hosp. Inc.,* 912 F.2d 129, 136 (6th Cir.1990).

The court notes, in passing, that several of the documents appended to Harduvel's motion cannot be considered newly discovered, since they were either in the plaintiff's possession at the time of trial or were created after April 22, 1987, the final day of trial.[15] The motion is defeated with respect to those documents.

### b. Due Diligence

 In order to prevail on her 60(b)(2) claim, Harduvel must offer "clear and convincing" evidence that she used "due diligence" in attempting to obtain the documents forming the basis of the instant motion. This Circuit requires that the movant act with the diligence of a "prudent person." *See Johnson Waste Materials v. Marshall,* 611 F.2d 593, 599 (5th Cir.1980); *Serio v. Badger Mutual Insurance Company,* 266 F.2d 418, 421 (5th Cir.1959). The court concludes that Harduvel did not act with "due diligence" in procuring the documents appended to the instant motion.

The plaintiff ultimately obtained *all* of the documents appended to her Rule 60(b) motion from the United States Air Force, a source which she had exploited successfully prior to trial. *See* Plaintiff's Memorandum Brief at 3–4; Defendant's Response at 40–41. As early as June, 1987, Harduvel began to supplement her discovery inquiries with FOIA requests, which the Air Force dutifully fulfilled. *See* Defendant's Response at 41; Defendant's Exhibit I. Harduvel received all service reports issued from January 1, 1979 through December 1982 and 73 TCTO's (time compliance technical orders) related to wire bundle chafing. *Id.* Evidence ultimately procured from government agencies well-known to the movant will not form the basis of a successful 60(b)(2) motion. *See Malandris v.*

*Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 703 F.2d 1152 (10th Cir.1983) (information obtained after trial from SEC and FBI not "newly discovered," where FOIA requests could have been filed).

In addition to making FOIA requests to the Air Force, Harduvel propounded discovery requests to General Dynamics. Notwithstanding any intransigence on the part of an opponent in responding to discovery requests, a party is entitled to no relief if diligence would have led her to extrapolate from evidence contained in the record. *See Wright v. Commercial Union Ins. Co.,* 818 F.2d 832 (11th Cir.1987) (identities of persons inspecting damaged property, who were not identified in interrogatory responses, could have been discovered through depositions); *Scutieri v. Paige,* 808 F.2d at 794 (taped deposition conducted two months before trial allowed movant sufficient time to investigate witness' background, despite other impediments); *Russ v. International Paper Co.,* 943 F.2d 589 (5th Cir.1991). In this case, Harduvel needed to look no further than the United States Air Force, a source she had successfully tapped during the course of discovery.

Since all of the documents appended to the instant motion were ultimately obtained from the United States Air Force, the plaintiff did not act with "due diligence" in attempting to procure the information from that source in time for trial. Although Harduvel's failure to offer clear and convincing evidence of diligence is dispositive, the court briefly considers the remaining prongs of the Eleventh Circuit test.

### c. Cumulative and Immaterial Evidence

 Evidence offered in connection with a Rule 60(b) motion can only be considered cumulative, impeaching, immaterial, or insignificant in the context of the record before the trial court. This court has already noted that the law of the case doctrine is designed to limit a trial court's

---

**14.** The cases do not make clear whether the documents or just the facts contained therein must have come into existence at the time of trial.

**15.** The following exhibits are not "newly discovered" within the meaning of the rule: 000021–41; 00233–49; 01157–58; 01159–60; 01166–67; 01168–70; ECP 1021; PFSDR 15191.

consideration of evidence already presented, implicitly or explicitly, to an appellate court. *See Smith Intern. v. Hughes Tool Co.,* 759 F.2d 1572 (Fed.Cir.1985) (applying doctrine to Rule 60(b)(2) motion); *United States v. Cirami,* 563 F.2d 26, 33 (2d Cir. 1977) (expressly applying doctrine to motions for relief from judgment). Thus, this court evaluates the appended materials with the appellate rulings firmly in mind.

The rulings on appeal establish two broad categorical directives which limit this court's consideration of Harduvel's "newly discovered" evidence. First, evidence relating to design defects will not disturb the Eleventh Circuit decision in light of that Court's application of the *Boyle* government contractor defense.[16] In particular, the court rejected analogies to similar aircraft (*i.e.* F–16A fighters other than Harduvel's aircraft), references to product-wide defects, and evidence of generic performance directives from the government. *See Harduvel v. General Dynamics Corp.,* 878 F.2d 1311, 1318 (11th Cir.1989), *cert. denied,* 494 U.S. 1030, 110 S.Ct. 1479, 108 L.Ed.2d 615 (1990). Second, Harduvel's Rule 60(b) motion will not succeed on the basis of evidence already found insufficient to support her claim of defective manufacture. The Court of Appeals dismissed as insufficient evidence tending to show: a particular defect in a small proportion of aircraft;[17] characteristics common to all or many F–16 aircraft;[18] general prohibitions against chafing or other defects; evidence

of corrections intended only for other aircraft. *Id.* at 1319–1320.

Harduvel's "new evidence" must be rejected in light of the rulings on appeal. Most of the appended documents, including those Harduvel presents as evidence of manufacturing defects, refer to defects in the design of the F–16 aircraft. For example, in the section of her Appendix entitled "Manufacturing Defects," Harduvel argues that the outcome of a 1986 investigation suggests the existence of "an enormous fleet-wide problem of chafing" and that the "great volume of this new chafing information testifies [sic] to the problem." *See* Plaintiff's Appendix at 20–22; Plaintiff's Exhibit 00869. Of course, evidence tending to establish "fleet-wide" problems is also evidence tending to suggest defects in *design.* The report concluded that the findings with respect to block 15 aircraft warranted "a review of *design* problems."[19] (emphasis added) Similarly, Plaintiff's Exhibit 01307 chronicles a chafing incident involving a block 15 aircraft in which the manufacturer replaced a single large clamp with two smaller clamps.[20] Harduvel offers no proof that the original design specified two smaller clamps. Rather, the most logical inference is that a problem developed with respect to the original approved design, and that the manufacturer and the government were forced to modify the design they had jointly conceived.

**16.** New evidence tending to defeat any of the three prongs of the *Boyle* government contractor defense would be neither cumulative nor immaterial. The documents would have to show that: General Dynamics failed to warn the government of wire chafing problems on the F–16 aircraft; the defendant knew that wire chafing presented a more serious problem than the government knew and failed to warn; Harduvel's plane failed to conform to specifications (*i.e.* that a manufacturing defect existed). Since all of the plaintiff's new evidence comes from the Air Force itself, she presents no evidence that General Dynamics concealed information from the Air Force. Justice Powell concluded, on the basis of TCTO 1078, that the government was aware of the seriousness of the chafing problem. The plaintiff presents no evidence that Captain Harduvel's plane failed to conform to government specifications.

**17.** The Court referred to evidence demonstrating chafing against protuberant screws in a small percentage of F–16 aircraft. *See Harduvel v. General Dynamics Corp.,* 878 F.2d at 1319–1320.

**18.** Once again, Justice Powell referred to the plaintiff's assertion that protuberant screws represented evidence of improper installation, a defect in manufacture. Such evidence failed to support the claim of defective manufacture, since the plaintiff had merely identified a trait common to all F–16 aircraft, rather than a defect endemic to Harduvel's plane.

**19.** This document was also created after trial.

**20.** Captain Harduvel flew a block 15C, F–16A aircraft, serial no. 81–0692.

The exhibits which do refer to manufacturing defects, relate to Harduvel's aircraft only by analogy. Exhibit 01447 indicates that the 0.875–inch screws on certain F–16 fighters failed to meet the government's specifications. The order further recommends that the screws be changed or filed down in order to avoid further chafing. However, the plaintiff offers no evidence whatsoever that this condition occurred or persisted in Harduvel's aircraft. Exhibits 1297 (loose wire harness bracket), 1300–1301 (wire harness chafing), and 1306 (wire harness chafing) also establish manufacturing defects endemic to particular aircraft without offering a shard of evidence as to the condition of Harduvel's plane.

The Court of Appeals has already declined the plaintiff's invitation to infer the existence of a manufacturing defect from isolated incidents involving other aircraft and has, likewise, refused to construe evidence of defects common to all F–16 aircraft as manufacturing defects. *See, especially, Harduvel v. General Dynamics,* 878 F.2d at 1319, 1320 ("protruding screws were a normal condition in the F–16, not a product of improper installation") ("plaintiff cannot rely on a sampling of seven aircraft out of a production block of 300"). Two thousand additional exhibits of this genus amount to more, rather than sufficient, evidence. The plaintiff's "newly discovered evidence" is cumulative of the evidence rejected on appeal.

### d. No New Result

The fifth prong of the Eleventh Circuit test requires that "the evidence . . . be such that a new trial would probably produce a new result." *Scutieri v. Paige,* 808 F.2d at 793. In light of the odd procedural posture of this case, the court does not consider whether the evidence now presented would alter a trial result which was already favorable to the movant. Rather, in order to avoid such a bizarre analysis, the court must determine whether the result *on appeal* would have favored the plaintiff. The Eleventh Circuit possessed a representative sampling of twenty "new" documents, and found that all of the evidence on the record was insufficient to make out a claim of defective manufacture or to defeat the government contractor defense. Since the remaining exhibits are rendered cumulative or immaterial by the findings of the Eleventh Circuit, the result could not have been different had all two thousand documents been submitted to that Court.

### 2. Rule 60(b)(3): Misconduct of Adverse Party

### a. Applicable Legal Principles

Rule 60(b)(3) affords relief from final judgments upon a showing of "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." Fed. R.Civ.P. 60(b)(3). Courts and commentators addressing this subsection have not developed discrete tests akin to the 60(b)(2) standard, discussed above, to evaluate claims of misconduct. However, a number of principles have emerged over time, and most of them enjoy consensus among the circuits.

Ordinarily, the following findings are requisite to granting a Rule 60(b)(3) motion to vacate: First, the movant must demonstrate by clear and convincing evidence that her opponent committed fraud or engaged in some other form of misconduct. Second, she must show that the alleged misconduct prevented her from making a "full and fair" presentation of her case. *See* 11 C. Wright & A. Miller, Federal Practice and Procedure at § 2860. *See also Harre v. A.H. Robins Co.,* 750 F.2d 1501, 1503 (11th Cir.1985); *Montgomery v. Hall,* 592 F.2d 278 (5th Cir.1979).

A few refinements have also been revisited consistently. Most courts agree that a movant need *not* demonstrate that the result of the former proceedings would be different in order to show that she was precluded from a full and fair hearing. *See Wilson v. Thompson,* 638 F.2d 801, 804 (5th Cir. Unit B Mar. 1981); *Seaboldt v. Pennsylvania Railroad Company,* 290 F.2d 296, 299 (3rd Cir.1961). Harduvel need only show that she was prevented from fully and fairly presenting her case or, otherwise put, that the new evidence would have allowed her to re-shape her

case. *See Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir.1978) (setting forth requirements of 60(b)(3) motion).[21]

Harduvel alleges misconduct based on misrepresentations contained in discovery materials and perjured testimony. Both grounds have been recognized as justifying relief in proper cases. *See* 11 C. Wright and A. Miller, Federal Practice and Procedure at § 2861. *See also Harre v. A.H. Robins Co.*, 750 F.2d 1501, 1505 (11th Cir. 1985) (finding perjury amounting to "misconduct" within meaning of rule); *Anderson v. Cryovac, Inc.*, 862 F.2d 910 (1st Cir.1988) (failure to produce requested materials can constitute "misconduct" for purposes of Rule). The court considers these allegations in turn.

### b. Misconduct in Discovery

#### (i) Clear and Convincing Evidence of Misconduct

 Harduvel offers no clear and convincing evidence of misconduct with respect to General Dynamics' incomplete responses to discovery requests. In a case turning upon intricate and often arcane detail, General Dynamics consistently responded to discovery requests with an array of highly technical objections. However, relief is commonly denied when a party has failed to produce documents in light of its own narrow construction of the movant's requests. *See, e.g., Montgomery v. Hall*, 592 F.2d 278 (5th Cir.1979); *Rauenhorst v. United States*, 104 F.R.D. 588, 600 n. 10 (D.Minn.1985) (accepted practice to construe opponent's requests narrowly and yield ground grudgingly).

This Circuit has always given discovery requests a "fair reading." *See Montgomery v. Hall*, 592 F.2d at 279 (party engages in 60(b)(3) misconduct if he fails to disclose evidence "clearly called for 'by any fair reading' of the discovery order"); *Rozier v. Ford Motor Company*, 573 F.2d 1332 (5th Cir.1978) (defendant's reliance on technical distinction between "cost-benefit analyses and written reports" in failing to produce was misconduct by any "fair reading").

The conduct which the *Rozier* court found inimical to fair discovery does not characterize General Dynamics' responses to interrogatories and requests for production. Harduvel lists twelve categories of documents which General Dynamics allegedly failed to provide in response to timely discovery requests and the court's order.[22] None of General Dynamics' actions rise to the level of misrepresentation within the meaning of Rule 60(b)(3).

Wire Chafing Incidents

The bulk of Harduvel's new materials relate to wire bundle routing changes, which were apparently proposed and implemented in an effort to correct chafing problems. *See* Plaintiff's Exhibits 01222–01559. Harduvel maintains that General Dynamics engaged in "selective production," which amounts to actionable misrepresentation. *See* Plaintiff's Memorandum Brief at 14.

The court has no doubt that General Dynamics dragged its feet in responding to the plaintiff's discovery requests and the

**21.** Many courts also maintain that Rule 60(b)(3) does not require a showing of fraudulent (or other malevolent) intention. The law in this Circuit remains unsettled. *See, e.g., Bros. Incorporated v. W.E. Grace Manufacturing Company*, 351 F.2d 208 (5th Cir.1965), *cert. denied*, 383 U.S. 936, 86 S.Ct. 1065, 15 L.Ed.2d 852 (1966) (affiant's intentions irrelevant); *Fackelman v. Bell*, 564 F.2d 734 (5th Cir.1977) (fraudulent intention may be necessary under some circumstances); *United States v. One (1) Douglas A–26B Aircraft*, 662 F.2d 1372, 1374–75 n. 6 (dictum in accord with *Bros.*); *First Nat. Life Ins. v. California Pacific Life*, 876 F.2d 877, 883 (11th Cir. 1989) (careless factual error did not amount to fraud). This court declines to decide the issue in light of its finding that any misconduct on the part of General Dynamics failed to deprive

Harduvel of an opportunity to "fully and fairly" present her case to the Court of Appeals.

**22.** General Dynamics allegedly failed to produce: wire bundle routing changes; printouts of field service reports; wire chafing incidents; failure of flight instruments due to chafing; chafing in right-hand strake; fires caused by chafing in right strake; DC power panel chafing; improper screws; battery chafing; radio or communication failures; insulation hazards; manufacturing defects. *See* Plaintiff's Motion for New Trial at 4.

The "court order" discussed throughout this section was issued by Magistrate Game on April 4, 1987. *See* Plaintiff's Exhibit A000140–143.

court's order for production. While General Dynamics' behavior was less than laudable, its actions do not rise to the level of misrepresentation. General Dynamics did make its voluminous files available in the form in which those files are maintained. Harduvel's expert decided not to review the information in light of the inconvenience attending this enormous task. *See* Plaintiff's Memorandum Brief at 14. Where a party grants access to its files in conformity with a discovery order, misconduct will not ordinarily be found. *See Harris v. Mapp,* 719 F.Supp. 1317, 1326–27 (E.D.Va. 1989) (relief denied where Sheriff's log not specifically requested and broad access to Sheriff's Office afforded). *Compare Anderson v. Cryovac, Inc.,* 862 F.2d at 931 (abuse of discretion to deny 60(b)(3) motion after movants unsuccessfully attempted to gain access to tannery, which concealed information). Unlike the defendants in *Anderson* and *Rozier,* General Dynamics made no attempt to conceal information specifically requested.

Printouts of Field Service Reports

After deposing James Farr, a General Dynamics field service engineer, Harduvel concluded that General Dynamics regularly stored information from Air Force reports in its central computer under the rubric "How/Mal." *See* Plaintiff's Exhibits A000205–217; A000208–209. Knowing that "How/Mal" was a category and not a species of report, General Dynamics responded that no such reports existed.

The defendant waited until the court "worded" the same request "differently." *Id.* at 10. Only when the court's phraseology was impeccable did the defendant act. The magic word was How/Mal "information." While How/Mal "reports" produced nothing, How/Mal "information" caused the General Dynamics computer to spew forth an impressive list of FSR's and PFSDR's with How/Mal information neatly printed in a separate column. *See* Defendant's Appendix at 10.

Once again, the court does not applaud General Dynamics' conduct, but the rules, while suggesting certain normative standards of professional conduct, do not con-

template paragons of virtue. Since the information was ultimately provided, Harduvel presents no clear and convincing proof of misconduct with respect to "How/Mal" information.

Battery Chafing

Section II(8) of the court order required that General Dynamics produce "Engineering Change Proposals relating to the battery status, battery monitoring and/or warnings pertaining to batteries aboard F–16's." Plaintiff's Exhibit A000142. Harduvel maintains that none of these documents was produced.

General Dynamics argues that the order refers only to ECP's. *See* Defendant's Appendix at 58. Under this interpretation, the court refers only to ECP's relating to battery warnings, rather than to "battery warnings" as well as ECP's pertaining to battery status and battery monitoring. Even if General Dynamics misinterpreted its obligations under the order, this court finds no clear and convincing evidence of misconduct.

In any event, a "fair reading" of the order would not require General Dynamics to produce incidents of wires chafing against the battery. *See* Defendant's Appendix at 59. To the extent that Harduvel complains of the absence of such documents, General Dynamics is not at fault, and there is no evidence that either party attached any significance to information relating to battery status or operation. *See* Plaintiff's Appendix at 17.

(ii) "Full and Fair" Opportunity

Although the evidence need not establish that the defendant's conduct prevented a different outcome, the movant must show that some avenue of discovery leading to a new theory or, in the alternative, a different emphasis, was foreclosed. Harduvel has not demonstrated that General Dynamics' conduct precluded a full and fair presentation of her case.

Harduvel alleges that, with the benefit of these two thousand exhibits, counsel may have re-shaped the case for relief from

defective manufacture.[23] In light of the odd procedural posture of this case, the court is forced once again to consider whether a change in trial strategy is even relevant. To suggest that Harduvel would have deviated from a strategy or emphasis that yielded a favorable result at trial would be ludicrous. The relevant issue is whether, with the benefit of the appended exhibits, the plaintiff's case would have appeared in a different form when it reached the Court of Appeals.

Harduvel does little to support her claim that General Dynamics' misconduct precluded a "full and fair" presentation of her case. She offers only conclusory statements contained within the affidavits of counsel and her experts. *See* Plaintiff's Exhibit A000003 (Papadakis Affidavit); A000010 (Alexander Affidavit); A000013 (Dooman Affidavit). *See also* Plaintiff's Memorandum Brief in Reply at 15. Nowhere in these voluminous documents and pleadings does Harduvel indicate *how* the new documents would have changed her strategy or emphasis. *See Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 392 (1st Cir.1990) (movant may not rely on conjecture and surmise in establishing impediment to full and fair presentation).

Harduvel had no specific information as to what caused the crash. In the absence of any useful physical evidence from the wreck, counsel introduced testimony from Alexander, a reconstruction expert. The expert could only make analogies to electrical failures in similar aircraft and identify, in the most generic terms, an incident involving the electrical system of Harduvel's own plane. This is precisely the evidence the Court of Appeals found insufficient to sustain a claim of defective manufacture. *See Harduvel v. General Dynamics Corp.*, 878 F.2d at 1314 (acknowledging plaintiff's theory that wire chafing caused electrical failure in aircraft). The additional materials have brought Harduvel no closer to explaining the cause of the fatal crash.

Rather, the appended documents suggest only what the parties and both courts already knew: wire chafing has been a problem throughout the history of the F–16 program. This court is aware of no evidence that would lead to the discovery of further information regarding specific defects endemic to Harduvel's aircraft, and the Court of Appeals has made clear its reluctance to consider evidence of defects in analogous products. *See, e.g., Harduvel v. General Dynamics Corp.*, 878 F.2d at 1319 (distinguishing and dismissing DC power panel defect based on change taking effect in later block 15E). In short, the appended exhibits point to no novel, heretofore ignored, emphasis which would have caused the case to appear in a materially different form before the Court of Appeals.

### c. Perjured Testimony

▮ The principal allegations of perjury involve testimony from Grant Grumbine and Billy Peebles regarding chafing and fires in the right strake area of the F–16 aircraft. Applying the same constellation of principles to these claims of perjured testimony, the court concludes that no clear and convincing evidence establishes perjury on the part of Grant Grumbine, Billy Peebles, or any other General Dynamics witness.

### Testimony of Grant Grumbine

After General Dynamics engineer Grant Grumbine testified to only six incidents of wire chafing in the recorded history of the F–16 program, Harduvel discovered more than thirty-five chafing reports. *See* Plaintiff's Exhibit A000346–47; A000335. *See also* Plaintiff's Appendix at 10–12. She also discovered fifty-seven reports of flight instrument failure resulting from chafed wires. *See* Plaintiff's Appendix at 7–8.

Although Grumbine failed to discuss all of the chafing incidents subsequently referenced in Harduvel's motion, the omissions do not rise to the level of perjury. The testimony at trial was restricted to report-

---

**23.** Once again, the rulings on appeal preclude Harduvel from pursuing her claim of defective design.

ed incidents of chafing that occurred behind aircraft panels 2204–2206. Grumbine further limited his testimony to incidents involving "damage" to wires, rather than reports describing "contact or touching" between wires and components.[24] Grumbine's ability to canvass the voluminous documentary material involved was severely inhibited by Harduvel's decision to disclose her theory of causation (the exact area of alleged chafing) at the time of trial. *See Plattner v. Strick Corp.*, 102 F.R.D. 612, 617 (N.D.Ill.1984) (company owner did not commit perjury in denying knowledge of violations since he could not be charged with such knowledge).

General Dynamics concedes that Grumbine neglected to mention at least one incident, involving damaged wiring under panel 2206 of aircraft no. 79–0400, called for on direct examination. *See* Defendant's Appendix at 41. The law of this Circuit does not support a finding of perjury on such a thin predicate. Harduvel's reliance on *Harre v. A.H. Robins Co.*, 750 F.2d 1501 (11th Cir.1985), vacated in part, 866 F.2d 1303 (11th Cir.1989), is misplaced. In *Harre*, the court found perjury when "a material expert witness testified falsely on the ultimate issue in the case, where the defense attorneys knew or should have known of the falsity of the testimony." *Id.* at 1503. The defendant's expert testified in a later proceeding, involving the same defense attorneys, that he had not conducted the experiments he claimed to have supervised at the trial of the first action. Unlike the witness in *Harre*, Grumbine did not create or profess to create the documents at issue, and no evidence implicates counsel in a plan to suborn perjury. Furthermore, the existence of a defect in a block 10 aircraft did not address the ultimate issue of establishing a causal link between a particular defect in manufacture and Harduvel's crash. The alleged misrep-

resentations regarding protuberant screws and clamps fall prey to the same objections.

In short, having observed Grumbine's demeanor at trial, the court concludes that the allegations of perjury are unfounded. *See Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 392 (1st Cir.1990) (decrying "Monday-morning quarterbacking" with respect to trial judge's perception of witnesses); *Malandris v. Merrill Lynch, Pierce, Fenner & Smith*, 703 F.2d at 1181.

Testimony of Billy Peebles

Billy Peebles, General Dynamics' Manager of Electrical Systems, testified that there had never been a report of fire burning within the right strake of an F–16 fighter plane. *See* Plaintiff's Exhibit A000373. The plaintiff has since discovered five reports of fire due to chafing in the right strake of the F–16. *See* Plaintiff's Appendix at 13–14; Plaintiff's Exhibit 01449–50. Peebles also denied that Kapton insulation was dangerous in its propensity to propagate fires, a second contention challenged in the appended materials. *See* Plaintiff's Exhibit A000372; Plaintiff's Appendix at 18–19.

General Dynamics does not attempt to repudiate Harduvel's proof of fires attributable to wire damage. Rather, the defendant argues that Peebles was not thinking of quotidian, run-of-the-mill fires, but only searched his recollection for "massive" fires. *See* Defendant's Appendix at 45–46. The discrepancy relates to the following exchange:

Q: Now, sir, this—this hypothetical fire that Mr. Price asked you about, a fire consumed [sic] wires in the right strake area presumably of an aircraft—have you had any report of this occurring anywhere on the face of the earth in an F–16?

A: No, sir, not to my knowledge.

---

**24.** Failing to proffer information beyond the purview of the examination, even where such information is clearly within the witness' knowledge, will not trigger 60(b)(3) relief. *See Taylor v. Texgas Corp.*, 831 F.2d 255, 259 (11th Cir. 1987) (witness who denied receiving disability benefits from employer did not commit perjury even though he had in fact received pension benefits from same corporation); *Wilson v. Thompson*, 638 F.2d 801 (5th Cir. Unit B Mar. 1981) (statement that "whole damned truth wasn't told" at trial not evidence of perjury but only showed that witness properly proffered no testimony outside scope of questioning).

Mr. Kelly: That's all.

Plaintiff's Exhibit A000373.

Peebles admitted the possibility of smaller fires before denying the existence of a fire capable of consuming wires. Although Peebles did admit that a "tiny blaze" was *possible,* he never told the court that a fire exceeding 1400 degrees celsius actually did occur in a Norwegian aircraft. *See* Defendant's Appendix at 45. *See also* Plaintiff's Appendix at 13; Plaintiff's Exhibit 01399A. Twenty wires were severely damaged in that fire, and several others were burned. A fire, even a large fire, did burn in the right strake area of an F–16 "someplace on earth."

Once again, testimonial error is not necessarily tantamount to testimonial misconduct. *See Peteet v. Dow Chemical Co.,* 868 F.2d 1428, 1435 (5th Cir.1989) (declining to find misconduct based on toxicologist's false testimony that he did not know man who was in fact his patient). The court is satisfied that Peebles did not commit perjury in failing to mention Plaintiff's Exhibit 01399A. The omission was not costly to the plaintiff, who apparently hoped to demonstrate that Harduvel's plane was subject to the same system failure that caused the fire in the foreign aircraft. Since the Court of Appeals rejected Harduvel's attempted analogies to similar products, she was not deprived of a full and fair opportunity to present an additional incident involving a foreign aircraft.

Peebles also testified that Kapton insulation was not "dangerous from the standpoint of propagating fires." Plaintiff's Appendix at A000372. While Harduvel has submitted some evidence of "flashover failure" attributable to the properties of Kapton insulation, the court finds no direct contradiction between Peebles' testimony and the military reports. Plaintiff's Appendix at 18–19. *See also* Plaintiff's Exhibit 00087–89. Whether the insulation, which the Air Force had apparently approved for use in several different aircraft, is "dangerous"—relative to other alternatives and based upon the number of incidents per service hour—was a matter of opinion.[25] In one post-trial survey, the Air Force discovered no "significant" flashover. *See* Defendant's Appendix at 70. Differences of opinion do not amount to misconduct within the meaning of the rule. *See Harris v. Mapp,* 719 F.Supp. at 1327. *Cf. Paige v. Sandbulte,* 917 F.2d 1108, 1110 (8th Cir.1990) (absence of direct conflict in testimony precluded relief for alleged perjury).

Several Witnesses: Failure of Flight Instruments

General Dynamics represented, through several witnesses, that no failures of flight instruments due to chafing had been reported. *See Harduvel v. General Dynamics Corp.,* 878 F.2d at 1315. General Dynamics maintains that the witnesses were only questioned about "navigation instruments," since Harduvel had postulated an electrical failure affecting the INU (inertial navigation unit), an instrument that receives inputs only from navigation instruments (*i.e.* the ADI, HSI). *See* Defendant's Appendix at 28, 30, 31. This distinction was apparently so subtle as to escape even the Eleventh Circuit, which referred to testimony pertaining to "flight," and not "navigation," instruments. *See Harduvel v. General Dynamics Corp.,* 878 F.2d at 1315. Although the distinction is fine and there is some overlap between flight and navigation instruments, it is likely that trained experts interpreted questions about "navigation" instruments narrowly and fairly. No perjury was committed during the trial of this case.

3. Rule 60(b)(6): Saving Clause, "Fraud on the Court"

▮ Rule 60(b)(6) offers relief from judgment only to accomplish justice and only in the most "extraordinary" circumstances. *See Olle v. Henry & Wright Corp.,* 910 F.2d 357, 365 (6th Cir.1990) (60(b)(6) confined to "unusual and extreme situations"); *Matter of Emergency Beacon Corp.,* 666 F.2d 754 (2d Cir.1981).

---

**25.** At one point, Grumbine qualified his opinion as to the lack of a "widespread" chafing problem, explaining that such evaluations must be made on a percentage basis. *See* Defendant's Appendix at 72–74.

In fact, the structure and phraseology of Rule 60(b) indicate that subsection six was intended as a residual clause, to be used only in dealing with a request for relief not falling within clauses one through five. *See* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2864 ("clause (6) and the first five clauses are mutually exclusive and ... relief cannot be had under clause (6) if it would have been available under the earlier clauses"). *See also Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 863 n. 11, 108 S.Ct. 2194, 2204 n. 11, 100 L.Ed.2d 855 (1988); *Solaroll Shade & Shutter v. Bio–Energy Systems,* 803 F.2d 1130, 1133 (11th Cir.1986).

■ The plaintiff's characterization of her request for relief does not determine the nature of the request. *See Transit Casualty Co. v. Security Trust Co.,* 441 F.2d 788, 791 (5th Cir.1971), *cert. denied,* 404 U.S. 883, 92 S.Ct. 211, 30 L.Ed.2d 164 (1971). Rather, the court must determine which section best suits the substance of the request. *See McLawhorn v. John W. Daniel & Co., Inc.,* 924 F.2d 535, 538 (4th Cir.1991) (court properly treated motions brought under 60(b)(2), (3), and (6), as having been brought under 60(b)(3) only).

■ The Eleventh Circuit recently considered the relationship of 60(b)(6) to other parts of the rule in *U.S. v. Real Property & Residence,* 920 F.2d 788, 791 (11th Cir. 1991). The disposition of that case makes clear that if the movant's request *can* be classified under any one of the first five clauses, the court must decline to consider the sixth clause, regardless of its failure to grant relief under another clause. *See* 7 Moore's Federal Practice § 60.27[1] (2d Ed. 1985) (Rule 60(b)(6) motion "must be based upon some reason other than those stated in clauses (1)–(5)"). Under the binding authority of *Real Property,* we cannot consider the plaintiff's Rule 60(b)(6) motion, if her request for relief can be classified under another subsection.

■ Harduvel's request for relief fits comfortably under subsections two and three. The evidence supporting the plaintiff's motion was arguably "newly discovered," and her allegations of misconduct certainly fit the profile of Rule 60(b)(3): "Ordinarily clause (3) is invoked where material information has been withheld or incorrect or perjured evidence has been intentionally supplied." *Matter of Emergency Beacon Corp.,* 666 F.2d at 759. Since the motion has been considered under at least one enumerated provision, this court need not, and cannot, consider the allegation of "fraud on the court" made pursuant to Rule 60(b)(6).[26]

### E. *Request for Hearing and Motion to Inquire*

Harduvel has had ample opportunity to present evidence in support of her claims of defective design and manufacture, and counsel have failed to persuade the court that further discovery or a hearing would aid the court's determination. *See Wilson v. Johns–Manville Sales Corp.,* 873 F.2d 869, 872–873 (5th Cir.1989) (district court properly exercised discretion in declining to hold hearing, since plaintiffs had submitted total of one hundred twenty-six exhibits); *Scutieri v. Paige,* 808 F.2d at 795. Accordingly, the request for a hearing and the motion to inquire are denied.

### F. *Conclusion*

This court joins the Court of Appeals in recognizing, with great pride, the brave dedication of our nation's service men and women. However, for the reasons set forth, the law does not permit a new trial on the facts of this case. Accordingly, the motion is DENIED.

So Ordered.

---

**26.** Even if the court were to consider the 60(b)(6) motion on its merits, the motion would fail. This court is not confronted with "an unconscionable plan or scheme which is de-signed to improperly influence the court in its decision." *Rozier v. Ford Motor Co.,* 573 F.2d at 1338 (quoting *England v. Doyle,* 281 F.2d 304, 309 (9th Cir.1960)).